UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 13-6549 MRW | Date | December 5, 2016 |
|---|---|---|---|
| Title | Velazquez v. Hernandez | | |

| Present: The Honorable | Michael R. Wilner | |
|---|---|---|
| Veronica Piper | | n/a |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiff / Petitioner: | | Attorneys Present for Defendant / Respondent: |
| None present | | None present |

**Proceedings:**   MEMORANDUM OF DECISION

1. The Court conducted a bench trial in this civil action. (Docket # 92.) Pursuant to Rule 52(a)(1), this memorandum of decision constitutes the Court's findings of fact and conclusions of law.

\* \* \*

2. The sole claim in the action involves infringement of a trademark under the Lanham Act. The Court has federal question jurisdiction under 15 U.S.C. § 1114 and 1121. The Court further finds that the subject of the dispute – the allegedly infringing use of the trademark at a restaurant / nightclub – occurred in Los Angeles County. Venue is therefore proper within the Central District of California.

\* \* \*

3. This case involves a musical group called Los Iracundos. The band formed in Uruguay in the early 1960s. Los Iracundos recorded numerous albums in 20+ years of studio work, and toured widely throughout South, Central, and North America and Europe.

4. In 1989, one of the founding members of Los Iracundos passed away. After that, the remaining original members launched three separate bands – all of which used the name Los Iracundos, and all of which performed the group's music. (Pivetta Test. at 157.)

5. Plaintiff Juan Carlos Velazquez (the band's original drummer) led one the groups. Velazquez's Iracundos group primarily toured in South America; he obtained some form of trademark protection for the band name in Uruguay and other nations on that continent. (Velazquez Test. at 46.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-6549 MRW | Date | December 5, 2016 |
|---|---|---|---|
| Title | Velazquez v. Hernandez | | |

      6.    Defendants Gianni Pivetta (a singer who resembles the band's original frontman, Eduardo Franco), Leonardo Franco (recently deceased, and the band's original guitarist), Adan Franco (Leonardo's son), and Ruben Aguilera were involved with another version of Los Iracundos. (Pivetta Test. at 165-67.) Leonardo Franco previously toured with the Velazquez faction of the band, but switched to this conjunto in approximately 2007. (Velazquez Test. at 30.)

      7.    Also involved with the Pivetta version of the band was Jesus Maria Febrero Galan (another original member of Los Iracundos). Mr. Febrero may have registered the Los Iracundos trademark with the U.S. Patent and Trademark Office in the mid-1990s – neither party proffered sufficient admissible evidence on this point at trial.[1] (Pivetta Test. at 180-82.)

      8.    The Pivetta-Febrero-Franco iteration of Los Iracundos performed in the United States under the band's name on a somewhat regular basis from the mid-1990s through 2012. This group engaged in tours of cities with large Latino populations on the East Coast, in the South and Southwest, and throughout California. They generally played in small clubs and larger venues. Velazquez was aware that this competing group toured in the United States as Los Iracundos beginning in 1993 or 1994. (Velazquez Test. at 32, 61, 86.)

      9.    During that period, Plaintiff's Iracundos group performed in South America, Central America, and in Europe. However, Velazquez conceded that his group did not perform regularly in the United States before 2012. (Velazquez Test. at 60.)

      10.    In October 2012, Plaintiff registered the Los Iracundos mark in his name with the U.S. PTO. At some point shortly before then (perhaps in 2011), Velazquez apparently caused the PTO to cancel the Febrero registration for the Los Iracundos mark. (Velazquez Test. at 51, 98; Pivetta Test. at 184.)

      11.    In September 2013, the Pivetta band played several concerts in Los Angeles under the name Los Iracundos. (Pivetta Test. at 186.) Plaintiff filed this federal action shortly after. Although the action originally sought money damages and asserted additional claims, Plaintiff proceeded to trial only on a claim for injunctive relief against Pivetta and two others for trademark infringement.

---

      [1]    The third branch of the group – also using the name Los Iracundos and led by another surviving original band member – did not perform in the United States during the relevant time period.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-6549 MRW | Date | December 5, 2016 |
|---|---|---|---|
| Title | Velazquez v. Hernandez | | |

    12.    The key witnesses at trial were Plaintiff Velazquez and Defendant Pivetta. Both convincingly explained that their versions of the surviving group performed under the name Los Iracundos for years. However, neither testified competently about the ownership of the band's name following the group's fragmentation in the 1980s.

\* \* \*

    13.    A party claiming ownership in a trademark "must have been the first to actually use the mark in the sale of goods or services. Sengoku Works Ltd. v. RMC Int'l, Ltd., 96 F.3d 1217, 1219 (9th Cir. 1996). Registration of a mark with the PTO is prima facie proof of ownership of a mark. 15 U.S.C. § 1115(a). However, a non-registrant can rebut this proof "if the non-registrant can show that he used the mark in commerce first." Sengoku Works, 96 F.3d at 1220.

    14.    Further, the legitimate owner of a mark may be barred from enforcing it under the equitable doctrine of laches. Laches is a defense to infringement when the plaintiff's delay in bringing an action was unreasonable and if the defendant was prejudiced by the delay. Internet Specialties West, Inc. v. Milon-DiGiorgio Enterprises, Inc., 559 F.3d 985, 990 (2009).

    15.    The limitations period for laches starts when the plaintiff "knew or should have known about its potential cause of action." Tillamook Country Smoker, Inc. v. Tillamook County Creamery Association, 465 F.3d 1102, 1108 (9th Cir. 2006). The prejudice component of laches involves whether the alleged infringer made "an investment in the mark [ ] as the identity of the business [or band] in the minds of the public." Internet Specialties West, 559 F.3d at 992.

    16.    Further findings regarding laches involve consideration of the following overlapping factors: "1) the strength and value of trademark rights asserted; 2) plaintiff's diligence in enforcing mark; 3) harm to senior user if relief denied; 4) good faith ignorance by junior users; 5) competition between senior and junior users; and 6) extent of harm suffered by junior user because of senior user's delay." E-Systems, Inc. v. Monitek, Inc., 720 F.2d 604, 607 (9th Cir. 1983).

\* \* \*

    17.    Based on the minimal amount of evidence presented at trial, the Court concludes that Plaintiff is not equitably entitled to injunctive relief to prevent Pivetta's band from using the Los Iracundos name.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-6549 MRW | Date | December 5, 2016 |
|---|---|---|---|
| Title | Velazquez v. Hernandez | | |

    18.    The Court finds that Velazquez's 2012 registration of the band name in the United States is not determinative of his ownership of the rights in this action. Plaintiff offered no proof that he used or exploited the band name (save for passive acceptance of song royalties) in the U.S. in the decades before 2012. Yet, during that period, Pivetta, Febrero, and (for at least a few years) Franco toured somewhat regularly in various American cities as Los Iracundos. The defense adequately established that they used the band name in the U.S. after the 1989 breakup and before Plaintiff did. <u>Sengoku Works</u>, 96 F.3d at 1220.

    19.    Moreover, the Court finds that laches precludes ruling in favor of Velazquez. Plaintiff clearly was aware that a version of the band operated in the U.S. before the 2012 registration and 2013 lawsuit. Pivetta and Febrero toured widely for nearly 20 years in this country. And, although the evidence of Febrero's registration of the Los Iracundos mark is murky, Plaintiff knew of its existence long before he took steps to cancel the competing mark. Further, Velazquez admitted at trial that he knew his former colleague Leonardo Franco jumped ship to the other band when Franco left Velazquez's group. Plaintiff unreasonably delayed enforcing his mark. <u>Tillamook Country Smoker</u>, 465 F.3d at 1108.

    20.    That delay clearly prejudiced the defense. The Febrero-Pivetta band toured openly for years under the Los Iracundos name. All of the marketing and concert promotional materials presented at trial showed the use of the name. Those national tours constituted an investment in the band name and identity. <u>Internet Specialties West</u>, 559 F.3d at 992-93 (comparing prominent use of brand name of grocery chain (Grupo Gigante) with minimal proof of ISP's identity).

    21.    Plaintiff fares no better under an analysis of the <u>E-Systems</u> factors. The junior user (Pivetta) had no reason to believe that, after 15 years of avoiding the U.S., Velazquez would return to this country to tour as Los Iracundos (factor 4). And, although Los Iracundos was a popular band in the 1960s, 1970s, and 1980s, the band fragmented for many years with competing tours around the globe. That served to dilute the value of the once-strong band name mark (factor 1). There has been minimal direct "competition" between the Iracundos legacy bands in the U.S., a conclusion buttressed by Velazquez's lack of performing in this country (factors 2, 5).

    22.    Finally, the future harm to Pivetta – a long-time user of the mark in North America – likely outweighs that of Velazquez, who has made little commercial use of the name in live touring (factors 3, 6). In cryptic testimony, Velzaquez stated that the recent Velazquez/Iracundo tours operate under "cultural exchange" visas for which Velazquez is not compensated beyond

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-6549 MRW | Date | December 5, 2016 |
|---|---|---|---|
| Title | Velazquez v. Hernandez | | |

recouping its expenses. (Velazquez Test. at 108.) However, Pivetta's group was clearly paid for its live performances at gigs. (Pivetta Test. at 172.)

      23.    The Court gave real consideration to Plaintiff's arguments regarding "pirate" and knock-off bands expropriating the name of a famous group. (Docket # 102.) Labelling Pivetta as a "session/touring musician" as compared to an "original member" has some real emotional resonance, and suggests that Velazquez has a greater moral entitlement to the Iracundos name.

      24.    Yet, underlying the whole dispute is a failure of solid proof as to who actually owned the right to the band name over the passage of time. C.f. Robi v. Reed, 173 F.3d 736, 738 (9th Cir. 1999) (listing history of assignments and agreements among band members regarding use of name "The Platters"). The uncontested proof is that, after the death of Eduardo Franco, the band members went their separate ways and did not challenge – for many years – the ability of the others to use the Iracundos name. The Court received no evidence concerning the actual ownership of the group's intellectual property or brand name.

      25.    So, while Velazquez surely has a strong claim to use the name as an original member, Pivetta remains a part of a group that formerly possessed two other founding members and one of their sons (a la Jason Bonham, Sean Lennon, or Zac Starkey). Equitable considerations of this sort weigh both ways under these circumstances.

      26.    No doubt there is a likelihood of consumer confusion in the future. The Court is concerned that music fans will have difficulty in determining whether the Velzaquez Iracundos or the Pivetta Iracundos are the "real" Los Iracundos. But neither party seriously advanced a consumer confusion argument at trial. Moreover, such confusion may well be inevitable given the parties' lackadaisical use of the mark in the United States over the years. It provides little incentive to prohibit one side or the other from performing under the band's brand name going forward.

      27.    For the foregoing reasons, the request for an injunction is DENIED. The Clerk is directed to enter a separate judgment in favor of the defense.